## Wood's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

LAMORELLE, P. J., Auditing Judge.—Bradley Wood died March 10, 1931, having first made a will, dated April 17, 1920, of which he appointed Effie Eckman

and John F. Basford executors, to whom letters testamentary were granted March 23, 1931.

After directing the payment of his just debts and funeral expenses, testator devised his entire estate in trust to pay the net income therefrom in quarterly instalments to his friend, Effie Eckman, for life, and after her death, bequeathed the corpus unto his stepbrothers, George W. Singleton and Bentley Singleton, and his sister, Annie Haywood, in equal shares absolutely and in fee. . . .

I. Effie Eckman, in her individual right, claims the entire balance for distribution by virtue of a judgment entered in a suit by her against Bradley Wood in his lifetime in the Supreme Court of Monmouth County, N. J., and affirmed by the Court of Errors and Appeals of the State of New Jersey on May 18, 1931. The amount of said judgment was $12,000, and credit is claimed in the account for the sum of $3024.86, reducing the amount of the indebtedness to $8975.14. The balance for distribution shown by the account is $7386.20.

One of the questions presented for determination is the effect to be given to said judgment in this jurisdiction.

Attached hereto, marked "A," and made part hereof is a stipulation of facts between Harry E. Kalodner, representing the remaindermen, and Harry M. McCaughey, for Effie Eckman in her individual capacity.

From this stipulation of facts, the evidence submitted and the record, it appears that on June 10, 1929, a decree was duly entered in the Court of Common Pleas No. 5, March Term, 1929, No. 16162, appointing the Market Street Title and Trust Company guardian of the estate of said Bradley Wood because of his inability to take care of his own property owing to sickness and weakness of mind; and that the said Market Street Title and Trust Company has since been succeeded by merger by the Integrity Trust Company.

It further appears that at the time of the institution of the suit hereinafter referred to the domicile of the said I. Effie Eckman was in the State of Pennsylvania and that she was temporarily residing in the State of New Jersey and taking personal care of the said Bradley Wood; and that the said Bradley Wood was also temporarily residing in the State of New Jersey. It further appears that the said I. Effie Eckman, when she began the suit hereinafter referred to, had full knowledge of the fact that the Market Street Title and Trust Company had been appointed guardian of the estate of the said Bradley Wood.

On December 19, 1929, the said I. Effie Eckman brought an action at law in the Supreme Court of the State of New Jersey against Bradley Wood, personally, for nursing, household services, etc. Service of said writ and complaint was made on Bradley Wood, personally, on December 19, 1929, at his temporary residence in Asbury Park, N. J. The said Market Street Title and Trust Company presented a petition to said Supreme Court of the State of New Jersey, alleging that the service of the writ and complaint on the said Bradley Wood in New Jersey was improper in view of the fact that a guardian had been appointed for him in the State of Pennsylvania. The New Jersey court held that the personal service of the summons and complaint was good and sufficient; denied the motion to set aside the service of process, found that Bradley Wood was "mentally incompetent" and was "unable to understand the effect of the . . ." proceeding, and appointed attorneys for the said Bradley Wood for the purpose of defending the said action. An affidavit of defense was filed thereafter setting up the appointment of the Market Street Title and Trust Company as guardian, and that the said Bradley Wood was mentally incompetent.

In said suit a verdict was rendered in the sum of $12,000, and judgment was rendered for such an amount, plus costs, $78.20.

In the stipulation of facts it is agreed that Bradley Wood had no property whatsoever in the State of New Jersey and that all his property was situated in the State of Pennsylvania under the control of said guardian. So far as the policies of insurance issued by the Prudential Insurance Company are concerned, this, as will hereinafter appear, is a conclusion of law, and does not bar an inquiry into the correctness thereof.

After the death of testator, the guardian filed its account in the Court of Common Pleas No. 5, and that court declined to make any distribution and ordered the fund in the hands of the guardian to be paid to the executors of the estate [In re Wood, 16 D. & C. 405].

The record of the Court of Common Pleas No. 5, above referred to, was offered in evidence, and there was also offered in evidence an exemplified copy of the proceedings in the New Jersey Supreme Court of Monmouth County between I. Effie Eckman, plaintiff, and Bradley Wood, defendant. The exemplified copy of said record, marked "B," is hereto attached and made part hereof.

The Market Street Title and Trust Company was appointed guardian in accordance with the provisions of the Act of May 28, 1907, P. L. 292. Section six of that act provides as follows:

"The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania."

Section forty-five of the Act of June 13, 1836, P. L. 589, 601, relating to lunatics, provides as follows:

"Every writ for the commencement of an action, against a person found to be a lunatic, as aforesaid, shall be served on the committee of the estate of such person, or upon the committee of the person, if there be no committee of the estate, and proceedings may thereupon be had, in like manner as if service had been made upon the defendant, being of sound mind."

If Miss Eckman had brought suit in the State of Pennsylvania, she could not have served a summons upon the said Bradley Wood. It would have been necessary for her to bring the suit against the guardian and to serve the guardian. The court would have had no power to render a judgment if no service had been made upon the guardian of the estate.

Article four, section one, of the Constitution of the United States provides as follows:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

It is true that the appointment of a fiduciary in Pennsylvania has no extraterritorial effect, and the New Jersey court applied this principle when it appointed New Jersey attorneys for the said Bradley Wood to defend the suit. The New Jersey court was not called upon to determine whether satisfaction could be obtained out of the assets in the hands of the guardian in Pennsylvania on the judgment rendered by it. That is the question for determination here.

As already stated, the appointment of the Market Street Title and Trust Company as guardian had no extraterritorial effect. It logically follows, if there had been assets in New Jersey, it would have been necessary, in order to obtain possession of those assets, to have an ancillary guardian appointed in the State of New Jersey. On the judgment obtained in the State of New Jersey satisfaction could have been obtained out of any assets in that state. In order to reach the assets in New Jersey, a suit against Bradley Wood personally was

the proper procedure. To reach the assets in Pennsylvania, however, a suit in Pennsylvania against the guardian was the proper procedure.

The plaintiff in this case, although her domicile was in Pennsylvania, and the domicile of Bradley Wood was also in Pennsylvania, for reasons best known to herself brought suit in the State of New Jersey, and she was necessarily confined in the collection of her judgment to the New Jersey assets.

In Reynolds v. Stockton, 140 U. S. 254, a similar question arose. In that case it appeared that one Parker was appointed receiver of the New Jersey Mutual Life Insurance Company, a New Jersey corporation. He was also appointed ancillary receiver of said corporation in the State of New York. Later, he resigned his position as receiver in the State of New Jersey and one Stockton was appointed his successor. There was no substitution as to the ancillary receiver in the State of New York. A creditor of the corporation brought suit against the said Parker as ancillary receiver and others and recovered judgment; and he endeavored to collect the amount of his judgment out of the New Jersey assets. It was held that he was not entitled to payment out of the fund.

The Supreme Court said he was not entitled for two reasons: first, that the judgment rendered in New York was not responsive to the issues tendered by the pleadings; and, secondly, that the judgment obtained in New York, even though responsive to the pleadings, could not be collected out of the New Jersey assets. Inter alia, the court said (page 272):

"Where a receiver or administrator or other custodian of an estate is appointed by the courts of one state, the courts of that state reserve to themselves full and exclusive jurisdiction over the assets of the estate within the limits of the state. Whatever orders, judgments or decrees may be rendered by the courts of another state, in respect to so much of the estate as is within its limits, must be accepted as conclusive in the courts of primary administration. . . . And this rule is not changed, although a party whose estate is being administered by the courts of one state permits himself or itself to be made a party to the litigation in the other . . . the judgment, even if responsive to the issues tendered by the pleadings, was not an adjudication binding upon him [referring to Stockton], or the estate in his hands." See, also, McLean et al., Exec'rs, v. Meek, Admin'r, 18 How. 16.

In order to determine what, if any, effect the judgment of the New Jersey court is entitled to, it becomes necessary to inquire whether there was any property belonging to Bradley Wood whose situs was in the State of New Jersey. It is clear that all of the property embraced in the present account had its situs in the State of Pennsylvania, with the possible exception of the policies issued by the Prudential Insurance Company.

Before passing upon this phase of the question, it seems appropriate to state what was done with reference to the collection of the amounts due on these policies.

One of these policies was in the sum of $2000 and the other in the sum of $524.86. These insurance policies were forwarded by Mr. Basford, the coexecutor, to the Prudential Insurance Company, and on June 10, 1931, the Prudential Insurance Company issued two checks in payment of the amount due on said policies, one in the sum of $2000 and the other in the sum of $524.86.

Mr. Byer, counsel for Mr. Basford, testified as follows: ·

"After sending them all the papers, I waited a month. When I asked for the check, the first letter was ignored. The second was ignored; and finally I got a letter that the check had been made to the order of John F. Basford and Effie Eckman and delivered to Harry C. Cooper, the attorney for Miss Eckman. I did nothing more until I apparently communicated with Mr. Cooper what disburse-

ment was made of these two checks. He informed me that Miss Eckman endorsed these two checks and gave them to him. I said they should be paid into the estate. I asked why he retained the amount. He said, 'I can retain it on account of my fee.' I have the correspondence to show we threatened him. We tried to force him to pay it to the estate because Miss Eckman had no right to endorse the check and to turn it over to Mr. Cooper."

Miss Eckman testified that Mr. Cooper received the checks for $2000 and $524.86 from the Prudential Insurance Company; that she did not know how Mr. Cooper got possession of them; that the checks were made payable to the two executors; that Mr. Cooper asked her to sign the checks, and said he would send the checks to Mr. Basford; that she did endorse them and possession was retained by Mr. Cooper; that Mr. Cooper received the proceeds of the checks and she did not; and that she tried later "in every way" to get the money.

How Mr. Cooper secured possession of the check or checks is not explained. When Miss Eckman was asked for an explanation, she stated that she had no knowledge on the subject.

At the time when Mr. Cooper secured the endorsement on the check or checks, he was not counsel for Miss Eckman in her representative capacity. Mr. Shoyer was her counsel; and, so far as the record discloses, she did not consult Mr. Shoyer prior to making the endorsement.

No civil or criminal prosecutions have been brought against Mr. Cooper. It was stated that Mr. Cooper claimed that he had a lien on the money collected from the Prudential Insurance Company for the services that he rendered to Miss Eckman in her individual capacity.

When it came to the preparation of the account, and it was shortly before that that Mr. McCaughey was employed as counsel, Mr. Basford insisted that the amount received by Cooper should be treated as if it had been paid to Miss Eckman in part payment of the judgment obtained by her in the State of New Jersey. The account was accordingly prepared. In it the accountants debit themselves with the receipt of the money and take credit for an equivalent amount as having been paid to Miss Eckman on account of her judgment; and at this point it becomes necessary to determine whether such credits shall be stricken from the account, for counsel for the remaindermen asks that this be done.

Generally speaking, the situs of a debt is where the debtor resides. See Sayre's Exec'rs v. Helme's Exec'rs, 61 Pa. 299. In that case the testator died in the State of New York, and letters testamentary on his estate were granted at the domicile. Suit was brought by them in Pennsylvania against the defendants on a promissory note. The defendants pleaded that no letters had been granted on the estate in Pennsylvania and that the plaintiffs had no right to sue them in the State of Pennsylvania. Evidence was produced to show that the testator at the time of his death had no goods in Pennsylvania and owed no debts there. A verdict was rendered for the plaintiff. On appeal to the Supreme Court, the judgment was reversed. Thompson, C. J., inter alia, said:

"The claim in suit being admitted to be the only estate of the decedent in this Commonwealth, its *situs* was the place for administration, by the express terms of the statute."

As the auditing judge understands, the Prudential Insurance Company of America is a corporation created and existing under the laws of the State of New Jersey, and it does business in the State of Pennsylvania and maintains an office here; and by statutory enactment it can be sued here. In the opinion of the auditing judge, however, this does not change the situs of the property. It is a debt due by a New Jersey corporation. It is a New Jersey asset. If it

had been necessary to take out ancillary letters in the State of New Jersey, and the ancillary administrator had collected the amount of the insurance, Miss Eckman, as judgment creditor, would have had the right to ask that she be paid the amount thereof, less costs of administration, in part payment of her judgment obtained in the State of New Jersey. The auditing judge applies the equitable maxim, "equity looks upon that as done which ought to be done," and he treats these payments of $2000 and $524.86 as valid payments out of New Jersey assets, and, therefore, refuses the motion to strike them out.

Mr. Kalodner, representing the remaindermen, also asks that the credit of $500, paid on account of the judgment under date of December 19, 1931, be stricken out. There is no evidence submitted under what circumstances this payment was made to Miss Eckman, but it may fairly be inferred that both executors joined in the payment. This sum of $500, unlike the $2000 and $524.86, was paid out of Pennsylvania assets, and as the New Jersey judgment had no binding effect so far as Pennsylvania assets are concerned, the credit is stricken from the account.

Mr. Kalodner, representing the remaindermen, also stated that some four hundred dollars, not included in the account, had been appropriated by Effie Eckman, the coexecutor and also a judgment creditor. He did not make it clear whether he was asking that both executors be surcharged or only Miss Eckman.

Miss Eckman testified that testator was given a legacy by some relative of his living in England of £111; that in American money it amounted to $365; that Cooper wrote to England and got possession of the money; that she did not know how Cooper got possession thereof; that the money never came into her possession; that when asked what demand, if any, she made upon Cooper to refund the money, she replied: "All I could do was to go and ask him for it. I went there and told him the circumstances. I could not do any more than that;" that she consulted Judge Bodine; and that she tried to get the money "in every way." She was asked how Mr. Cooper knew of this legacy of £111, and she replied: "I do not believe I told him;" and when she was asked the further question, "Did you tell him?" she replied: "He said he was in communication with the lawyer in England." When asked who was her attorney at that time, her answers were not responsive but evasive, and because they were the auditing judge told the witness to leave the stand.

Mr. Byer testified that after the filing of the account he ascertained there was an additional asset of £111 due the estate in the administration of a relative's estate in England; that Mr. Basford had no knowledge that it was paid to Mr. Cooper until two weeks after the account was filed; that he then found it had been sent to Mr. Cooper and that he had retained the money; that he did not know how he obtained the money; that Cooper sent a small balance of it to Mr. McCaughey or Miss Eckman; that it was rather a small sum, for he claimed there was still some three hundred dollars due for services to Miss Eckman; that he retained the most of it; and that he sent a draft of twenty or thirty dollars.

From the statement made by Miss Eckman when asked the question, "How did Mr. Cooper know of this legacy of £111 from England?" and the answer, "I do not believe I told him," it may be fairly inferred that she did know of this legacy. How Mr. Cooper could have learned of this legacy except through Miss Eckman is not disclosed. Were it not for the fact that she states that she did not tell him, the auditing judge would infer that he got the information from her. Be that as it may, there is no proof, as there was with respect to the Prudential Insurance Company policies, that a check had been made out to the two executors and that Cooper was put in a position to collect that money by

getting the endorsement of Miss Eckman to the check. In the circumstances, the auditing judge declines to surcharge.

The auditing judge is of the opinion, on the facts as stated, that Mr. Cooper wrongfully applied the money collected by him for the estate in payment of what Miss Eckman may have owed him individually. He has not been asked, however, to set aside any sum for the purpose of defraying expenses of proceedings against Mr. Cooper. If it is the desire of the parties in interest that such sum shall be set aside for such a purpose, that may be incorporated in the schedule of distribution hereinafter ordered.

*Harry M. McCaughey*, for exceptant; *Harry E. Kalodner*, contra.

HENDERSON, J., December 23, 1932.—The facts are fully set out in the adjudication. We agree with the auditing judge that the judgment obtained in New Jersey against this lunatic bound only assets in that state: Reynolds *v*. Stockton, 140 U. S. 254; and could not have been pressed against the Pennsylvania guardian in lunacy. The estate held by that guardian was in custodia legis and to reach it an independent suit would have to be prosecuted in our courts. This judgment obtained in the lifetime of the lunatic was valid only in New Jersey.

The lunatic is now deceased and the account of his executors is before us. These executors could not have been sued in New Jersey, except to reach assets in that state. This estate is still in custodia legis and to reach it an independent proceeding in Pennsylvania is necessary. None has been brought and no adequate explanation of such omission has been offered.

The exceptions are dismissed and the adjudication is confirmed absolutely.