# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Denten*, 2012 IL App (2d) 110814

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF DONNA LYNN DENTEN, a Disabled Person (First Bank and Trust Company of Illinois, Plaintiff-Appellee, v. John Hoeper and James Hoeper, Defendants-Appellants). |
| District & No. | Second District<br>Docket No. 2-11-0814 |
| Filed | June 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings involving a guardianship estate, the judgment liens created by plaintiff bank's recording of its deficiency judgment on real property owned by the ward and the bank's service of a citation to discover assets gave the bank priority over the probate court's unperfected awards of attorney fees and other administrative expenses approved in the guardianship estate, and neither the *lis pendens* notice of the guardianship proceeding nor the Probate Act gave any priority to the probate court's allowances for the guardians and the fees and expenses. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-P-660; the Hon. Diane Winter, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Rebecca Wallenfelsz and David S. Barritt, both of Chapman & Cutler LLP, of Chicago, for appellants.

Edward F. Malone and Vito S. Solitro, both of Barack Ferrazzano Kirschbaum & Nagelberg LLP, of Chicago, for appellee.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Bowman and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The appellants, John and James Hoeper, as guardians for the estate of their mother, Donna Denten (Guardians), appeal from an order of the probate court granting a motion for turnover of assets by the appellee, First Bank and Trust Company of Illinois (Bank). In the order, the trial court ruled: (1) the Bank's act of recording a deficiency judgment against a property owned by Ms. Denten, along with the service of a citation on John Hoeper, as Guardian of the estate, created a security interest in the estate's assets; (2) the recording of a *lis pendens* notice of the guardianship against that property did not give judgments and orders of the probate court priority over the secured interest of the Bank; and (3) the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 *et seq.* (West 2010)) did not require payment of administration expenses, including fees, over payment to a secured creditor. For the following reasons, we affirm.

¶ 2    I. FACTS

¶ 3    A. The Guardianship Estate

¶ 4    On July 23, 2008, this case was commenced in the probate court and a temporary guardianship estate was created for Ms. Denten, a temporarily disabled adult (Guardianship Estate).[1] On July 29, 2008, a *lis pendens* notice was recorded on property located at 405 Mayflower, Lake Forest, Illinois (Mayflower property), and property located at 799-801 Everett Road, Lake Forest, Illinois (Everett property). A copy of the *lis pendens* notice was mailed to the Bank.

¶ 5    On August 15, 2008, the probate court appointed Thomas Pasquesi as the guardian *ad litem* (GAL) for Ms. Denten. On October 16, 2008, a temporary guardian was appointed and given authority to list and sell the Mayflower property and the Everett property. On June 25,

---

[1]Ms. Denten died in August 2011, after the probate court entered the July 19, 2011, order that is the subject of this appeal, and after the Guardians filed their notice of appeal.

2009, the probate court appointed Ms. Denten's sons, John and James Hoeper, as permanent limited guardians of the estate. The probate court gave the Guardians the duty to manage most, but not all, of the assets of the estate. Among other things, the probate court appointed the Guardians to "represent Donna Lynn Denten in all legal proceedings, including but not limited to appearing in and addressing all matters, rights, claims and defenses in the foreclosure proceeding filed by First Bank and Trust Company of Illinois." The Guardians were also given authority to sell the Mayflower and Everett properties and to manage and petition to sell Ms. Denten's tangible personal property as required.

¶ 6        On January 9, 2009, the probate court approved payment of the GAL fees in the amount of $17,876.14. On January 21, 2010, the probate court approved payment of the GAL fees in the amount of $9,772.50. On November 12, 2010, the probate court approved payment of the GAL fees in the amount of $4,545. The total fees awarded to the GAL were $29,193.64.

¶ 7        On July 30, 2009, the probate court approved payment of fees and costs of Chapman and Cutler LLP (Chapman and Cutler), counsel for the Guardians, in the amount of $39,056.08 for services in connection with the guardianship through June 25, 2009, and approved the fees and costs of Dr. Karen Wiviott in the amount of $16,864. On January 21, 2010, the probate court again approved payment to Chapman and Cutler, this time in the amount of $12,342.88 for services through December 31, 2009. On November 30, 2010, the probate court approved payment of $6,609.92 and $196,125 to Chapman and Cutler for services through October 31, 2010.

¶ 8        On November 4, 2010, the Guardians filed a petition for guardians' fees for services rendered through September 2010. The Guardians also filed a petition for approval of sales of tangibles. On November 10, 2010, the Bank filed a petition to intervene as an interested party in the guardianship proceedings. The Bank was given leave to intervene, and it filed responsive pleadings to the petition for guardians' fees, the petition for approval of sales of tangibles, and the petition for attorney fees through October 31, 2010. On November 30, 2010, as noted above, the court approved payments to Chapman and Cutler totaling $202,734.92. On January 2, 2011, the court approved a $2,400 fee to John Hoeper, a $1,500 fee to James Hoeper, and a $79,650 fee to Jackie Hoeper, Ms. Denten's daughter and guardian of the person.

¶ 9                    B. The Foreclosure Proceedings and Deficiency Judgment

¶ 10        On January 26, 2009, the Bank filed a foreclosure proceeding against both the Mayflower and the Everett properties in case No. 09-CH-363. In the foreclosure action, the Bank sought to recover $9,490,893.82 owed to the Bank by Ms. Denten under a loan that was in default. The Bank sought to foreclose on both properties on the ground that they were both collateral for the defaulted loan. In amended pleadings in the foreclosure action, the Bank named the Guardians as defendants and the Guardians actively litigated the matter on behalf of the estate.

¶ 11        On July 29, 2010, the chancery court granted the Bank partial summary judgment in the foreclosure action, and on August 18, 2010, the court entered a judgment of foreclosure and sale of the Mayflower property. However, on October 19, 2010, the court granted summary

judgment on the foreclosure claim against the Everett property on the ground that the language in the mortgage document on the Everett property that the Bank claimed made that property collateral for a loan taken out against the Mayflower property was inoperative because it appeared in the recitals of the Everett mortgage and not in its granting provisions.[2]

¶ 12    On November 23, 2010, the Mayflower property was sold for $9 million. Following the sale of the Mayflower property, on December 1, 2010, the chancery court entered a deficiency judgment in the amount of $4,646,360.20 against Ms. Denten and the Guardianship Estate. The next day, the Bank recorded the deficiency judgment against the Everett property. On December 3, 2010, the Bank served a citation to discover assets upon Ms. Denten and John Hoeper, as Guardian (Citation). On December 6, 2010, Chapman and Cutler accepted service of the Citation. After conducting the Citation examinations, the Bank moved for a turnover order in the chancery court on February 23, 2011. The Guardians objected to the Bank's motion for turnover. The chancery court then transferred the motion to the probate court on February 28, 2011.

¶ 13    On April 6, 2011, a sheriff's sale of the Everett property was conducted in connection with the recorded deficiency judgment and sheriff's levy, and the Bank purchased the Everett property. The chancery court confirmed the sale on May 4, 2011, subject only to the estate's right to redeem the property, which expired on October 6, 2011. The estate did not redeem the property and the Guardians did not appeal the order confirming the sale.

¶ 14                    C. Petition for Distribution and Motion for Turnover

¶ 15    On March 18, 2011, the Guardians filed a petition for disbursement of estate funds and their response to the Bank's motion for a turnover order. In the petition, the Guardians requested authorization to pay all administrative expenses of the estate first and to pay the expenses of the other creditors second. To the extent that the assets of the estate were insufficient to satisfy the foregoing, the Guardians requested that the probate court allocate the funds *pro rata* among the various creditors and claimants within each category.

¶ 16    On July 19, 2011, the probate court granted the motion for turnover and denied the Guardians' petition for distribution of estate funds. The court ruled that the Bank, by virtue of the judgment liens created by recording the deficiency judgment and serving the Citation, had "priority over the unperfected awards of attorney fees and other fees/expenses approved in the Guardianship Estate." The court also found that neither the recording of the *lis pendens* notice of the guardianship proceeding nor the Probate Act created a priority as to the allowances made by the probate court for the Guardians, the GAL, and the attorney fees and expenses.

---

[2]The Guardians filed a notice of appeal from the chancery court's order granting the Bank summary judgment on its action to foreclose on the Mayflower property, and the Bank cross-appealed from the court's order granting the Guardians summary judgment with regard to the foreclosure action on the Everett property. This court has recently affirmed both of the trial court's orders in that case. *First Bank & Trust Co. of Illinois v. Hoeper*, 2011 IL App (2d) 110003-U.

## II. ANALYSIS

On appeal, the Guardians contend that the trial court erred in granting the Bank's motion for turnover of the assets of the Guardianship Estate. Specifically, they make the following arguments: (1) the probate court erred in finding that a judgment creditor can create a security interest in the assets of an estate by serving a citation and recording the judgment; and (2) even if the Bank had a security interest in the assets of the estate, the probate court's order failed to recognize that the allowances by the probate court have priority and/or are binding on the Bank.

### A. Standard of Review

Since this appeal concerns the probate court's determination as to the priority in the payment of the assets of the estate among various parties, the matters before this court involve questions of law, in particular statutory interpretation. Accordingly, we will review the Guardians's appellate contentions *de novo*. *In re Estate of Funk*, 221 Ill. 2d 30 (2006).

### B. Security Interest

We will first address the Guardians' contention that the probate court erred when it found that the Bank's acts of recording the deficiency judgment and serving the Citation created a security interest in favor of the Bank in the assets of the estate.

#### 1. *Assets in the Estate–In Custodia Legis*

Within this argument, the Guardians contend that assets in the Guardianship Estate are *in custodia legis* and are therefore not subject to levy or attachment by a creditor or other party. Specifically, they argue that, unlike assets of individual judgment creditors, the assets of an estate are subject to the probate court's jurisdiction with the establishment of the estate, and the guardian is considered the agent or officer of the court. See *Cobleigh v. Matheny*, 181 Ill. App. 170, 173 (1913) (a guardian appointed by the court holds his office in the nature of and as an officer of the court appointing him). Next, although not specifically articulated, the Guardians appear to be arguing that since the estate's assets are subject to the probate court's jurisdiction, and the guardian is the agent or officer of the court, the assets of the estate are *in custodia legis*. Therefore, the Guardians argue that Illinois law has long recognized the common-law principle that funds held *in custodia legis* are not subject to attachment or garnishment except as expressly authorized by statute. As support for this proposition, the Guardians cite to *Gende v. Flemming*, 55 Ill. App. 3d 659 (1977) (in the absence of express statutory authority, bail bond money held by clerk of court is not subject to attachment or garnishment), and *Roberts v. Dunn*, 71 Ill. 46 (1873) (property held under a forthcoming bond is in the custody of law and is not subject to seizure for enforcement of money judgment against the debtor). The Guardians admit that there is no Illinois case law applying this principle to a guardianship estate and the assets within that estate. However, they point to decisions in several foreign jurisdictions for our review. See *Stevenson v. Superior Court*, 88 Cal. Rptr. 462 (Cal. Ct. App. 1970); *Sadler v. Wagner*, 475 P.2d 901 (Wash. Ct. App.

1970); *Gerdenich v. Goss*, 60 N.E.2d 603 (Ind. App. 1945); *In re Wood's Estate*, 17 Pa. D. & C. 770 (1932); *Hudson v. Wilber*, 72 N.W. 162 (Mich. 1897). Finally, the Guardians acknowledge that, in Illinois, several statutory provisions expressly allow a lien, levy, or garnishment of a representative of an estate or the assets of an estate.[3]

¶ 25    In response, the Bank argues that not only is there no Illinois precedent applying this principle to a guardianship estate, the Probate Act makes clear that the Civil Practice Law (735 ILCS 5/art. II (West 2010)) applies to proceedings under the Probate Act, and the Civil Practice Law clearly contemplates judgment liens attaching to property held in guardianship estates. Specifically, the Bank cites to section 12-103 of the Code of Civil Procedure as support for its contention. 735 ILCS 5/12-103 (West 2010).

¶ 26    Section 1-6 of the Probate Act provides, in pertinent part:

"§ 1-6. Civil Practice Law applies. The Civil Practice Law[4] and all existing and future amendments and modifications thereof and the Supreme Court Rules now or hereafter adopted in relation to that Law shall apply to all proceedings under this Act, except as otherwise provided in this Act." 755 ILCS 5/1-6 (West 2010).

¶ 27    Section 12-103 of the Code of Civil Procedure provides:

"§ 12-103. Representative capacity. A judgment entered against a person not as a result of a contract made by him or her or a tort committed by him or her *** but solely because he or she is the holder of title to property as receiver, trustee of a specifically identified trust, representative as defined in Section 1-2.11 of the Probate Act of 1975[5], or in any other fiduciary capacity, shall be enforced only against property held in the particular representative capacity, but no judgment shall be enforced against nor shall the judgment constitute a lien upon, other property owned by such person, whether individually or in some other designated identifiable representative capacity." 735 ILCS 5/12-103 (West 2010).

¶ 28    The Bank then points out that section 1-2.15 of the Probate Act, the succeeding provision to section 1-2.11 (the section noted in section 12-103 (735 ILCS 5/12-103 (West 2010)), includes "guardian" in the definition of "representative," thereby acknowledging that judgment liens can be placed on the assets of a guardianship estate. 755 ILCS 5/1-2.15 (West 2010).

¶ 29    Before we address the Guardians' argument, we must point out that the Bank incorrectly refers to section 12-103 of the Code of Civil Procedure (735 ILCS 5/12-103 (West 2010)) as being part of the Civil Practice Law. In fact, the Civil Practice Law is contained within the

---

[3]See 735 ILCS 5/12-703 (West 2010) (permitting creditors to garnish administrator and executor for indebtedness of beneficiary/distributee of decedent's estate); 35 ILCS 405/10 (West 2010) (creating lien on property of decedent's estate for taxes); 305 ILCS 5/3-10 (West 2010) (creating lien on real estate for public aid provided by state).

[4]735 ILCS 5/art. II (West 2010).

[5]755 ILCS 5/1-2.11 (West 2010).

Code of Civil Procedure, but it is limited to article II of that Code. See 735 ILCS 5/art. II (West 2010). Therefore, the Bank's argument that section 12-103 of the Code of Civil Procedure is support for the proposition that the Civil Practice Law contemplates judgment liens attaching to property held in guardianship estates is not well-taken.

¶ 30 With regard to the Guardians' argument that the assets of the estate are *in custodia legis*, we are not persuaded. First, the Illinois cases that the Guardians cite for this proposition are not even remotely similar to the instant case. Those cases involved bond money that was held in the custody of the court in order to secure performance of the party that gave the bond. In *Gende*, 55 Ill. App. 3d at 661-62, a defendant released on bond gave the clerk of the court money in order to secure the defendant's attendance at trial. In ruling that a judgment creditor does not have the right to a garnishee's money in the possession of an officer or agent of the court, the appellate court held that to hold otherwise would undermine the purpose of a bail bond because the defendant would realize that he could not hope to recover his bail bond money even if he complied with the terms of his bond. *Id.* Similarly, in *Roberts*, 71 Ill. at 50, the supreme court held that property pledged pursuant to a levy bond was not subject to attachment by the sheriff to satisfy another debt. The policy underlying the courts' decisions in these cases, that allowing the attachment of court funds would defeat the purpose of the bond, has no application to the instant case.

¶ 31 We are also not persuaded by the cases that the Guardians cite from foreign jurisdictions. First, only two of those cases involve guardianship estates. See *Wood's Estate*, 17 Pa. D. & C. 770; *Stevenson*, 88 Cal. Rptr. 462. *Wood's Estate* pertained to issues of competing jurisdiction between the probate court and another court, an issue that is not present in this case. *Wood's Estate*, 17 Pa. D. & C. at 772-73. Stevenson based its finding, that an estate in the hands of a guardian is *in custodia legis*, on precedent from the California Supreme Court, as well as noting that California's probate code contained specific sections that provided a means for obtaining a court order for the payment of a legally established claim that could not be enforced by a direct levy of execution. *Stevenson*, 88 Cal. Rptr. at 465. As we have noted, such precedent does not exist in Illinois, and our Probate Act does not provide for alternate ways of obtaining a court order for the payment of a legally obtained judgment if it cannot be enforced by execution.

¶ 32 Here, neither the Illinois statutes nor the case law supports the Guardians' proposition that the assets in the Guardianship Estate are *in custodia legis*. Further, we are not persuaded by the two out-of-state cases that the Guardians cite to with regard to a guardianship estate and the concept of *in custodia legis*, one of which is almost 80 years old. Accordingly, we reject the Guardians' contention that the assets of a guardianship estate are not subject to levy or attachment by a creditor or other party unless expressly authorized by statute.

¶ 33 2. The Probate Act and Distribution of Assets

¶ 34 Next, the Guardians argue that, in granting the Bank's motion for turnover, the probate court erred by effectively determining that article XII of the Code of Civil Procedure, rather than the Probate Act, controls the rights of creditors, guardians, counsel for the guardians, and a GAL in and to the assets of the estate. The Guardians argue that in any proceeding

involving an estate, and the rights of a creditor in and to an estate, the Probate Act should control. Further, they claim that the proper manner by which the Bank should have sought to enforce its deficiency judgment is to have filed the judgment in the probate proceeding and to have sought an allowance from the probate court. Finally, they argue that the probate court's order was contrary to the *in rem* nature of a probate proceeding.

¶ 35    A judgment becomes a lien on the real estate of the person against whom it is entered from the time the judgment is filed with the recorder of deeds in the county in which the property is located. 735 ILCS 5/12-101 (West 2010).

¶ 36    A supplementary proceeding is a postjudgment process that is designed to aid the judgment creditor in discovering assets to satisfy the judgment. *Wachovia Securities, LLC v. Loop Corp.*, No. 05 C 3788, 2010 WL 5860436, at \*4 (N.D. Ill. May 5, 2010). In Illinois, civil judgments are enforced through supplementary proceedings pursuant to section 2-1402 of the Civil Practice Law and Illinois Supreme Court Rule 277. 735 ILCS 5/2-1402 (West 2010); Ill. S. Ct. R. 277 (eff. July 1, 1982).

¶ 37    Section 2-1402(a) of the Civil Practice Law provides, in pertinent part:

"A judgment creditor \*\*\* is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a) (West 2010).

Subsection (m) of that section provides that the proper service of a citation to discover assets creates a lien on "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." (Internal quotation marks omitted.) *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997). The lien created by section 2-1402(m) of the Civil Practice Law "is considered perfected as of the date of service of the citation." *Id.*

¶ 38    The record reflects that as of December 1, 2010, the Guardianship Estate consisted primarily of two categories: (1) the Everett property; and (2) tangible personal property. The Bank's deficiency judgment attached to those assets, making the Bank a secured creditor with respect to nonexempt property. First, the judgment attached to the Everett property when the judgment was recorded with the Lake County recorder's office on December 2, 2010. See 735 ILCS 5/12-101 (West 2010). Second, the judgment attached to all tangible personal property when the Bank served the Citation on Ms. Denten and John Hoeper on December 3, 2010. See 735 ILCS 5/2-1402(m) (West 2010).

¶ 39    The Guardians assert that the Probate Act "should govern the payment of creditors' judgments, and their rights and interests." However, they cite to no section of the Probate Act to support a contention that the Civil Practice Law's judgment enforcement provisions do not apply to the personal property of the Guardianship Estate. 735 ILCS 5/art. II (West 2010). In fact, as we have noted, the Probate Act specifically provides that the Civil Practice Law applies to it. See 755 ILCS 5/1-6 (West 2010). Second, the Guardians claim that the "proper

manner by which [the Bank] should seek to enforce its deficiency judgment is to have filed its judgment in the probate proceeding and seek an allowance from the probate court." The Guardians do not cite any provision of the Probate Act or any other legal authority for this proposition, and such a claim is inconsistent with the facts of the instant case. Specifically, on June 25, 2009, the probate court entered an order for appointment of limited guardians that gave the Guardians the power to, among other things, "represent Donna Lynn Denten in all legal proceedings, including but not limited to appearing in and addressing *all matters, rights, claims and defenses in the foreclosure proceeding* filed by First Bank and Trust Company of Illinois." (Emphasis added.)

¶ 40    While the Guardians suggest that the Bank was circumventing the authority of the probate court by enforcing its judgment, it defies logic to suggest that the probate court could give the Guardians the power to defend the foreclosure action in the chancery court, but at the same time the Bank could not record the deficiency judgment it was awarded in the chancery court pursuant to the laws governing that court in regard to recording judgments involving real property. See 735 ILCS 5/12-101 (West 2010). Once the chancery court entered the judgment and the Bank perfected its liens, the Guardians were successful in having the Bank's claims transferred to the probate court for adjudication.

¶ 41    Finally, the Guardians argue that the awards made to them from the probate court should be entitled to priority over the Bank's claims because proceedings before the probate court are *in rem*, and judgments of that court are binding on property of the estate as opposed to individual parties. They claim that the probate court's July 19, 2011, order is contrary to the *in rem* nature of a probate proceeding because, in reaching its determination, the probate court effectively determined that a judgment rendered by the probate court on the allowance of fees, debts, and expenses against the estate is no different from other forms of money judgment entered against a person. If this position were to be upheld, the Guardians contend, then any creditor of an estate, following an allowance by the probate court, would be required to file a levy and/or citation against the estate as provided in article XII of the Code of Civil Procedure to collect or secure his claim. Furthermore, they claim, since article XII of the Code of Civil Procedure also exempts certain assets, such as qualified retirement plans, social security, etc., from attachment, no probate court could ever award payment of fees and expenses from these exempt assets. As an example, the Guardians argue that, if a guardianship estate consisted solely of retirement benefits and social security, a court could not award payment of a guardian's fees and costs from these assets.

¶ 42    The administration of an estate in the probate court is not an action between or among parties, but is in the nature of a proceeding *in rem*, acting directly on the *res*, which is the estate of the deceased or the disabled person, and the judgment of the probate court settling the estate is a judgment *in rem*. See *Bosnak v. Murphy*, 28 Ill. App. 2d 110, 115 (1960). Since the probate court's jurisdiction is over the assets of the estate only, its judgments bind claimants with respect to the property, not to each other. See *Mosier v. Osborn*, 284 Ill. 141, 146-47 (1918).

¶ 43    Simply because the probate court's judgments are binding on the property in the Guardianship Estate, however, does not mean that the allowances by the probate court are entitled to priority. Here, the Guardians cite to no authority whatsoever, in either the Probate

Act or case law, to suggest that, when establishing priority between secured judgment lienholders and holders of *in rem* awards or judgments, the long-accepted rule that secured judgment liens are entitled to priority over all unsecured claimants does not apply. See *Atwater v. American Exchange National Bank of Chicago*, 152 Ill. 605, 617-18 (1894)*; Roseboom v. Whittaker*, 132 Ill. 81, 89 (1890). The cases that the Guardians cite do not address the priority of claims in the probate court; instead, they involve issues of *res judicata* and other issues of the preclusive effect of probate court judgments. See *Mosier*, 284 Ill. at 146-47 (holding that "[t]he appellee was not estopped to assert in the litigation concerning the title to the real estate in question that he was the sole and only heir of [the deceased]" because the probate court order was "not binding upon appellee except only in so far as it affected the personal property of the estate"); *Bosnak*, 28 Ill. App. 2d at 115-16 (refusing to reopen an estate because the petitioner failed to demonstrate fraud, thereby giving preclusive effect to a judgment of the probate court); *Norris v. Wirz*, No. 80 C 6836, 1985 WL 1862, at *3-6 (N.D. Ill. June 26, 1985) (refusing to give the effect of *res judicata* or collateral estoppel to probate court proceedings). Again, none of these cases suggests that an award or judgment of the probate court, by itself, gives a successful claimant a judgment that has priority over a secured creditor.

¶ 44     The Guardians also assert that, if we find that a secured creditor has priority over unsecured claims in a guardianship estate, then each creditor of an estate, following an allowance by the probate court, would be required to file a levy and/or citation against the estate as provided in article XII of the Code of Civil Procedure to collect or secure his claim. And, per article XII, such creditors could collect or secure payment only from assets not exempt by article XII.

¶ 45     Here, the record reflects that one of the probate court's orders awarding the GAL fees and expenses explicitly stated that the award "may be recorded as a memorandum of judgment or other lien at the Guardian ad Litem's discretion." Further, the Guardians acknowledge that the GAL in this case *did* record his judgment of fees and expenses. We see no reason why the other award recipients from the probate court could not simply have recorded their awards and thereby obtained the status of a secured creditor. Finally, we will not address the Guardians' argument that since article XII of the Code of Civil Procedure exempts certain assets, such as qualified retirement plans, social security, etc., from attachment, no probate court could ever award payment of fees and expenses from these exempt assets. The issue of exempt assets is not part of this appeal, and therefore we will not address this hypothetical argument. *Salce v. Saracco*, 409 Ill. App. 3d 977, 983 (2011) (arguments based on hypothetical factual settings will not be considered by a reviewing court).

¶ 46                     3. Articles XVIII and XXVII of the Probate Act

¶ 47     Next, the Guardians argue that sections 18-10 and 18-13 of the Probate Act (755 ILCS 5/18-10, 18-13 (West 2010)), although not applicable to guardianship estates, provide guidance for ordering the distribution of a guardianship estate that has become insolvent with multiple competing claims against the estate. While they concede that there is no appellate court in Illinois that has ruled on the issue of priority between a guardianship estate's

administration expenses and the claims of general creditors as to the distribution of estate funds, they contend that several cases have indicated that a probate court should distribute the funds of the estate in a manner consistent with sections 18-10 and 18-13 of the Probate Act. As support for this contention, the Guardians cite to *In re Estate of Gebis*, 186 Ill. 2d 188 (1999), and *Melbourne Corp. v. United States Fidelity & Guaranty Co.*, 93 Ill. App. 3d 702, 704 (1981). The Guardians also argue that section 18-15 sets forth the provisions for payment of claims against the estate of a ward. See 755 ILCS 5/18-5 (West 2010). Finally, they argue that article XXVII of the Probate Act creates a right in the representative, GAL, and counsel for the representative to payment in connection with their services, which should be given priority in a guardianship estate. See 755 ILCS 5/27-1, 27-2, 27-4 (West 2010); *In re Estate of Wellman*, 174 Ill. 2d 335, 352-53 (1996); *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1063 (2009).

¶ 48 Section 18-10 of the Probate Act provides that claims in *decedent* estates should be divided into classes in the following manner:

"1st: Funeral and burial expenses, expenses of administration, and statutory custodial claims. ***

2nd: The surviving spouse's or child's award.

3rd: Debts due the United States.

4th: Money due employees of the decedent ***.

5th: Money and property received or held in trust by decedent which cannot be identified or traced.

6th: Debts due this State and any county, township, city, town, village or school district located within this State.

7th: All other claims." 755 ILCS 5/18-10 (West 2010).

¶ 49 Section 18-13 of the Probate Act concerns priority of payment in *decedent* estates and provides as follows:

"Except as provided in Section 19-6, the representative of a decedent's estate shall pay from the estate all claims entitled to be paid therefrom, in the order of their classification, and when the estate is insufficient to pay the claims in any one class, the claims in that class shall be paid pro rata." 755 ILCS 5/18-13 (West 2010).

¶ 50 We are not persuaded by the Guardians' argument that sections 18-10 and 18-13 of the Probate Act provide guidance for ordering the distribution of a guardianship estate that has become insolvent and has multiple competing claims against the funds of the estate. First, where a statute lists things to which it refers, an inference arises that omissions should be understood as excluded. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442 (1992). Here, both sections specifically refer to *decedents'* estates, and not guardianship estates. The only reasonable conclusion that can be drawn from the legislature's failure to include the same priority scheme for guardianship estates is that it did not intend to create such a scheme. See *People v. Golden*, 229 Ill. 2d 277, 281 (2008) (applying the doctrine of *expressio unius est exclusio alterius*, a canon of construction holding that to express or include one thing implies the exclusion of the other).

¶ 51    Second, contrary to the Guardians' contention, we do not agree that in *Gebis*, 186 Ill. 2d at 197, our supreme court indicated that a probate court should distribute the funds of an insolvent guardianship estate in a manner consistent with sections 18-10 and 18-13 of the Probate Act.

¶ 52    *Gebis* involved guardianship proceedings following the death of a ward. There, the decedent's son, a co-guardian of the estate along with his sister, filed a statutory custodial claim against the guardianship estate following the decedent's death. The sister brought a motion to dismiss, and the trial court granted it on the basis that the statute establishing a custodial claim was unconstitutional. The brother filed a direct appeal, and the supreme court held that the trial court did not have jurisdiction to award a statutory custodial claim against the guardianship estate, which terminates upon the death of the ward, and that the brother could bring his claim only against the decedent's estate. *Id.* at 195-98. The court reasoned that sections 18-10 and 18-13 of the Probate Act would be "undermined *** if a statutory custodial claim can be filed against a guardianship estate, *because a guardianship proceeding is not governed by the priority schedule established in sections 18-10 and 18-13.*" (Emphasis added.) *Id.* at 197-98.

¶ 53    Despite the clear language in *Gebis*, the Guardians quote the following paragraph from that case as support for their claim that the supreme court articulated a "strong policy consideration" as to why the priority schedule in sections 18-10 and 18-13 should be adopted in guardianship proceedings:

        "Although at first this decision may appear unduly technical, the consequences of the contrary result are significant. Article 18 of the Probate Act establishes detailed procedures for the adjudication of claims against a decedent's estate. Among these procedures is a schedule setting forth the priority in which claims against a decedent's estate, including section 18-1.1's statutory custodial claim, must be paid. [Citation.] If a custodian were allowed to file a statutory custodial claim against the guardianship estate, that person could effectively circumvent the priority schedule established in sections 18-10 and 18-13." *Gebis*, 186 Ill. 2d at 197.

¶ 54    Contrary to the Guardians' claim, this passage from *Gebis* makes clear that sections 18-10 and 18-13 of the Probate Act do *not* apply to guardianship estates *and* that our supreme court has specifically addressed this issue. The problem here is not that someone is trying to circumvent a legislative priority scheme of decedents' estates by filing a claim in a guardianship estate. Instead, the problem here is that the Guardians are trying to invent a legislative priority scheme that does not exist.

¶ 55    The Guardians then claim that the decision in *Gebis* has been called into question by several appellate court cases "since it appears contrary to Article 9 of the Illinois Constitution, which makes all courts in Illinois, including a probate court, one court, and, as such, courts of general jurisdiction." See *Pellico*, 394 Ill. App. 3d 1052; *In re Alex T.*, 375 Ill. App. 3d 758 (2007); *In re Estate of Ahern*, 359 Ill. App. 3d 805 (2005).

¶ 56    We are not persuaded. Our review of the cases cited by the Guardians indicates that in those cases the appellate court distinguished *Gebis* on the jurisdictional issue, but was silent on the application of the priority schedule to guardianship estates. *Pellico*, 394 Ill. App. 3d

at 1070 (refusing to apply *Gebis*'s jurisdictional holding); *Alex T.*, 375 Ill. App. 3d at 762 (refusing to apply "statutorily limited jurisdiction" as stated by *Gebis* in the criminal context); *Ahern*, 359 Ill. App. 3d at 810-11 (reversing the lower court's dismissal for lack of subject matter jurisdiction and finding that the "circumstances of the present case are distinguishable from those presented in *Gebis*").

¶ 57    The Guardians also cite *Melbourne*, 93 Ill. App. 3d at 704. In *Melbourne*, the trial court approved *pro rata* shares of an insolvent guardianship estate to two nursing home creditors with seemingly equal footing. *Id.* That case does not aid us in our analysis, however, since it does not involve the issue of priority of claims, and there is no evidence that either creditor had a secured claim.

¶ 58    We also reject the Guardians' claim that section 18-15 of the Probate Act controls here. That section provides that "[c]laims allowed against the estate of a ward shall be paid by the representative as he has funds therefor." 755 ILCS 5/18-15 (West 2010). Although this section gives the representative, here the Guardians, the ability to pay claims against the estate as they have "funds therefor," nothing in this section suggests that the Guardians should pay those claims in accordance with sections 18-10 and 18-13 of the Probate Act. 755 ILCS 5/18-10, 18-13 (West 2010). The issue in this case is *how* to apportion these claims, and section 18-15 does not address that issue.

¶ 59    Finally, the Guardians argue that sections 27-1, 27-2, and 27-4 of the Probate Act (755 ILCS 5/27-1, 27-2, 27-4 (West 2010)) provide that the award and distribution of the administrative expenses of the Guardianship Estate are "subject only to the court's determination that the amount was reasonable and necessary for the proper administration of the estate."

¶ 60    Here, none of those statutes, nor any authority cited by the Guardians, states that those fees are "subject only to the court's determination that the amount was reasonable and necessary for the proper administration of the estate." It is clear that those sections authorize fees for attorneys and guardians. However, as we continue to note, the issue here is the priority of these fees as compared to the Bank's secured judgment.

¶ 61                    C. Priority of Probate Court's Allowances

¶ 62    In the alternative, the Guardians argue that, even if the Bank has a security interest in the assets of the Guardianship Estate, the probate court's order failed to recognize that the allowances by the probate court have priority and/or are binding on the Bank. Specifically, the Guardians claim: (1) the attachment is subject to prior allowances by the probate court against the estate assets; (2) the Bank is bound by the determination of the probate court as to any proceeds from the sale of the Everett property, under section 2-1901 of the Code of Civil Procedure (735 ILCS 5/2-1901 (West 2010)); and (3) the Bank is bound by the determination of the probate court as to payment of fees and expenses.

¶ 63    With regard to their argument that the Bank's security interest is subject to the prior allowances by the probate court, the Guardians argue that, at the time of the recording of the deficiency judgment and the service of the Citation, the probate court had already awarded payment of certain fees and expenses. Further, since a judgment by a probate court in

connection with an estate is an *in rem* judgment, the probate court's order for the allowances of payment from the estate of fees and expenses was a grant of property of the estate to those recipients. An attachment or levy under article XII of the Code of Civil Procedure, such as the Bank's attachment, they contend, is subject to the prior *in rem* judgment because a judgment *in rem* divests the owner of the property. As support for this proposition, the Guardians cite to *Shaffer v. Heitner*, 433 U.S. 186, 206 (1977).

¶ 64    The Guardians' argument is without merit. First, the Guardians cite no authority for the proposition that the simple act of awarding allowances in a guardianship estate, even though it is an *in rem* judgment, automatically divests the estate of those funds such that they are no longer in the estate. As the Guardians acknowledge, *Schaffer* simply stands for the proposition that a judgment *in rem* directly affects the property owner by divesting him of his rights in the property before the court. *Id.* The issue in this case, however, is whether the Bank's deficiency judgment has priority over the Guardians' award of allowances in the Guardianship Estate. The Guardians never suggest that these funds were actually taken out of the estate before the Bank recorded its deficiency judgment and served its Citation. Instead, this argument is simply an unpersuasive end-run around the issue of priority.

¶ 65    Next, the Guardians argue that the *lis pendens* notice served on the Bank in July 2008 "gives priority to the judgments rendered in the probate proceeding over judgments or liens entered subsequent to such proceedings."

¶ 66    The statute pertaining to *lis pendens* does not pertain to priority, but rather operates to give potential claimants constructive notice of the proceedings. See 735 ILCS 5/2-1901 (West 2010). In interpreting Illinois law, the Seventh Circuit has held that "the Illinois *lis pendens* statute does not give the filer a lien, [citation], for filing requires neither the title holder's consent nor judicial intervention. The *lis pendens* just gives notice to purchasers of the land that there may be superior interests." *In re Leonard*, 125 F.3d 543, 545 (7th Cir. 1997). Since the filing of the *lis pendens* has no effect on the priority of the distribution of estate funds, this contention is also without merit.

¶ 67    Finally, the Guardians argue that the Bank is bound by the probate court's award of fees and expenses because it was a party to the proceedings. As support for this contention, the Guardians cite to *Ford v. First National Bank*, 201 Ill. 120 (1903), *Miller v. Miller*, 82 Ill. 463 (1876), and *Wood v. Johnson*, 13 Ill. App. 548 (1883).

¶ 68    We have reviewed the cases cited by the Guardians and find that none of them addresses the exact issue in this case with respect to priority of claims in a guardianship estate. Accordingly, they do not aid us in our analysis.

¶ 69    Finally, we note that we are aware of the harsh consequences of this ruling. However, as a court we are bound by the law in Illinois as it pertains to guardianship estates. Had the Probate Act provided a specific scheme for the priority of payments in guardianship estates, as it does for decedents' estates, our ruling might have been different. However, any changes to the Probate Act must occur in this state's legislature and not in its courtrooms.

¶ 70                                        III. CONCLUSION

¶ 71        For all these reasons, we find that the trial court properly granted the Bank's motion for turnover in the Guardianship Estate. Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 72        Affirmed.